**Glenn S. Bacal** (AZ Bar No. 006812)
E-mail: glenn.bacal@bacalgroup.com
**Sean D. Garrison** (AZ Bar No. 014436)
E-mail: sean.garrison@bacalgroup.com
Direct Dial: 480-719-8501
**BACAL LAW GROUP, P.C., DBA**
**BACAL & GARRISON LAW GROUP**
6991 East Camelback Road, Suite D-102
Scottsdale, Arizona 85251
Fax: (480) 245-6231

*Attorneys for Plaintiff for Plaintiff Arizona Board of Regents,*
*for and on behalf of Arizona State University*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Board of Regents, a body corporate, for and on behalf of Arizona State University,<br><br>Plaintiff,<br><br>v.<br><br>John Doe aka "asu_covid.parties", an individual, and Facebook, Inc., a Delaware corporation<br><br>Defendants. | Case No.<br><br>**VERIFIED COMPLAINT FOR DIRECT AND CONTRIBUTORY FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING UNDER LANHAM ACT SECTION 43(a), STATE TRADEMARK DILUTION UNDER A.R.S. 44-1448.01, AND UNFAIR COMPETITION**<br><br>(Jury Trial Demanded) |

## **INTRODUCTION**

This action involves the unauthorized use of Plaintiff's ASU and ARIZONA STATE UNIVERSITY federally registered trademarks as well as ASU's school colors trade dress by an Instagram account – "asu_covid.parties" – to promote a so-called "Hoax-19" Covid party, claiming that Covid-19 is "a big fat hoax," and spreading dangerous misinformation about Covid-19 just as students are returning to ASU's campuses to begin classes on August 20, 2020.

Plaintiff Arizona Board of Regents, a body corporate, for and on behalf of Arizona State University ("ASU") brings this action to stop this unauthorized use of the ASU Marks and trade dress and to shut down  the "asu_covid.parties" Instagram account.  This unauthorized use of ASU's trademarks and trade dress not only harms ASU, but if not enjoined is also likely to endanger the health of the university community. There is already evidence of at least one instance of actual confusion regarding ASU's affiliation with this Instagram account, with an alumnus threatening to cut off all support for ASU because of the apparent misperception that this account and its messaging comes from or has been sanctioned by ASU.

ASU also seeks relief against Facebook, Inc., the owner and operator of the Instagram platform and service, as a contributory infringer of ASU's federal intellectual property rights. Before filing this action, ASU first filed a trademark infringement report with Instagram requesting that Instagram remove or alter  the offending account but Instagram has refused to remove or otherwise require any modifications of the account or its posts.  Despite actual knowledge of the infringement, and the ability to control and monitor the "asu_covid.parties" account on its platform – and contrary to its own terms, policies and community guidelines – Facebook continues to provide its Instagram service to "asu_covid.parties," which in turn provides the means of infringement.

Further worsening this situation, the initial investigation indicates that the parties behind this account may be located in Russia and are using the account to sow confusion and conflict and to interfere with the health of the Arizona State University community by trying to worsen the pandemic here.  This lawsuit is also necessary in part to discover the true identity of the parties behind this account.

Because of the serious public health issues involved here, ASU is seeking expedited discovery, as well as a temporary restraining order, preliminary injunction, and permanent injunction to enjoin "asu_covid.parties" from using ASU's trademarks and trade dress and to enjoin Facebook from continuing to provide the Instagram service to the "asu_covid.parties"

account owner, as set forth in its accompanying motion for temporary restraining order and preliminary injunction.

For its Complaint, Plaintiff ASU specifically alleges:

## PARTIES

1.     Plaintiff is an Arizona body corporate that oversees three public universities in Arizona, including Arizona State University, the State of Arizona's largest university whose largest campus is located in Tempe, Arizona.

2.     John Doe is the account holder of the Instagram social media account with the username "asu_covid.parties."  Upon information and belief, John Doe is intending to host one or more "Covid Parties" in Arizona in the coming days or weeks.

3.     Facebook, Inc., a Delaware corporation with its principal place of business at 1601 Willow Road,  Menlo Park CA 94025, owns and operates the Instagram social media platform and service.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338 because it arises under the federal Lanham Act, 15 U.S.C. §1051 et seq.

5.      This Court has supplemental jurisdiction over ASU's state law claims pursuant to 28 U.S.C. §1367 because they form part of the same case or controversy.

6.     This Court has personal jurisdiction over John Doe aka "asu_covid.parties" on Instagram because, among other things, (a) the account holder has engaged in infringing activities in Arizona, including but not limited to the promotion of a "Covid Party" event in Tempe, Arizona using the ASU Marks; and (b) the account holder has knowingly and purposefully directed their activities at Arizona causing harm to ASU in Arizona.

7.     This Court has personal jurisdiction over Facebook because, among other things, it has purposefully availed itself of the privilege of conducting business in Arizona, its actions giving rise to ASU's contributory infringement claim are purposefully directed at Arizona, and

the effects of its continuing to provide its Instagram account service to "asu_covid.parties" despite being apprised of the infringement are knowingly caused by Facebook and felt by ASU in Arizona.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

**GENERAL ALLEGATIONS**

9.      Founded in 1885, ASU became known as Arizona State University in 1958 and has continuously operated under the ASU and ARIZONA STATE UNIVERSITY trademarks ever since then.

10.     ASU is the owner of numerous ASU, ARIZONA STATE UNIVERSITY, and ARIZONA STATE federal trademark registrations for a variety of different goods and services, including but not limited to:

| MARK | REGISTRATION NO. | GOODS/SERVICES |
|------|------------------|----------------|
| ASU | 1462309 | Educational and entertainment services namely, offering undergraduate, graduate, post-graduate and continuing adult instruction; sponsoring athletic events; and presenting cultural, dramatic and musical entertainment events |
| ASU | 5525349 | Making hotel reservations for others; hotel services; restaurant services; bar services; catering services; providing hotel accommodations; hotels; arranging and providing temporary accommodations for others |

| MARK | REGISTRATION NO. | GOODS/SERVICES |
|---|---|---|
| ARIZONA STATE UNIVERSITY | 1499947 | Educational and entertainment services, provided both on and off campus, namely, producing and creating classroom instruction, seminars, field trips, lectures, discussions, individual tutoring and counseling, laboratories, films, slide shows and other special programs, both independently of and as a part of accredited graduate and undergraduate degree programs, post degree programs, and continuing adult education; presenting cultural, dramatic, musical, intellectual and entertaining exhibitions, programs and events for students, faculty and general public; planning and presenting intramural, intercollegiate and exhibition athletic and sporting events including football, basketball, track and field, gymnastics, baseball, wrestling, volleyball, badminton, golf, tennis, archery, softball, swimming and diving, cross-country, and the like |
| ARIZONA STATE UNIVERSITY | 1449597 | Publications namely, handbooks pamplets, manuals, brochures, |

| MARK | REGISTRATION NO. | GOODS/SERVICES |
|---|---|---|
| | | programs, newspapers, schedules and other informative printed and written material concerning the university and its related activities |
| ARIZONA STATE | 1499948 | Educational and entertainment services, provided both on and off campus, namely, producing and creating classroom instruction, seminars, field trips, lectures, discussions, individual tutoring and counseling, laboratories, films, slide shows and other special programs, both independently of and as a part of accredited graduate and undergraduate degree programs, post degree programs, and continuing adult education; presenting cultural, dramatic, musical, intellectual and entertaining exhibitions, programs and events for students, faculty and general public; planning and presenting intramural, intercollegiate and exhibition athletic and sporting events including football, basketball, track and field, gymnastics, baseball, wrestling, volleyball, badminton, golf, tennis, archery, |

| MARK | REGISTRATION NO. | GOODS/SERVICES |
|------|------------------|----------------|
|      |                  | softball, swimming and diving, cross-country, and the like |

(collectively, the "ASU Marks"). True and correct copies of these registrations and printouts from the United States Patent and Trademark Office database showing the current status and title of each registration are attached as **Exhibit 1**.

11. ASU is also the owner of the ASU school colors trade dress, consisting of maroon and gold, which it has been using since at least as early as 1898. ASU's maroon and gold color scheme has been used extensively on merchandise, in advertising and promotional materials, and on ASU's website and social media accounts to designate ASU and its goods and services, such that consumers – especially Arizona consumers – readily recognize maroon and gold as representing ASU.

12. In addition to the extensive unsolicited media coverage that ASU regularly receives, ASU invests substantial sums annually to advertise and promote its educational programs, services, athletic programs and sponsored events in a wide variety of media, including Instagram and other social media, to students, prospective students, alumni and the general public, all of which results in the wide and extensive exposure of the ASU Marks and maroon and gold trade dress to the public in direct association with the University. ASU operates its official Instagram account with the username "arizonastateuniversity" that also prominently features the ASU Marks and school colors trade dress.

13. As a result of its longstanding use and promotion of the ASU Marks, these marks have become famous in Arizona and extremely well known and well regarded throughout the United States and the world.

14. More than 48,600 students applied as incoming first-year students to ASU for the fall 2019 semester. ASU accepted 85% of student applicants in fall 2019 and welcomed

7

its largest ever class of 13,168 first year students.  In total, almost 120,000 students enrolled at ASU in the fall of 2019.  Total enrollment has continued to increase year over year, exceeding 100,000 students each year since the fall of 2017.

15.     U.S. News & World Report rates 98 undergraduate and graduate programs at ASU among the top 50 in the country, including 64 programs in the top 25 and 22 programs in the top 10.  ASU has held the No. 1 ranking for innovation five years in a row.

16.     ASU is one of Arizona's largest employers with more than 17,000 employees.

17.     In 2018, approximately 250,000 ASU graduates worked in Arizona.

18.     In Fiscal Year 2019, the university generated an economic impact of nearly $4 billion on the state's gross product and 49,278 jobs.

19.     At the close of the 2019 fiscal year, more than 101,500 individual, corporate and foundation supporters had donated to ASU.  ASU received a record-breaking $413.7 million in philanthropic support from these donors throughout Arizona and the world in 2019 for its academic programs, research and initiatives.

20.     ASU has a rich and prominent history in athletics, and has used the ASU Marks prominently to identify its athletics program.  Many of ASU's athletic teams are NCAA Division 1 and their games are nationally televised.  ASU's teams have won at least 143 national titles, including 24 NCAA championships, and over 60 Pac 10/12 championships. Arizona State athletes have won at least 382 individual national titles. See Exhibit 2 (lists of Arizona State team and individual national champions).  Plaintiff was named the No. 1 college athletic program in the U.S. by Sports Illustrated in 2007-2008.    See Exhibit 3 (article published July 16, 2008).

21.     ASU plans, holds, sponsors, and promotes numerous events each year on its campuses and within the surrounding communities, including but not limited to events for incoming and returning students.

22.     ASU   regularly   maintains   an   events   page   on   its   website (https://asuevents.asu.edu/) to promote certain of these events.   In the current Covid-19 environment, all events not directly related to the educational or research mission of the university have been canceled.

The "asu_covid.parties" infringement

23.     On or about July 19, 2020, defendant John Doe, whose true identity and location are currently unknown, created an Instagram account with the username "asu_covid.parties" and posted the following message:



In addition to using the ASU mark as the first part of the account username "asu_covid.parties," the John Doe defendant included the ARIZONA STATE UNIVERSITY mark immediately below the username on the post, an ASU logo within the body of the message, and formatted the post in ASU's maroon and gold school color trade dress.   As posted, the message falsely appears to originate from ASU or an account associated with ASU. True and correct copies of relevant pages and posts from the "asu_covid.parties" Instagram account are attached collectively as **Exhibit 4.**

24.     As shown below, the username and account profile misleadingly suggest that this account is associated with ASU, even though it is not:



The profile uses the heading "ASU Coronavirus Parties" and categorizes itself as an "Event Planner" "THROWING HUGE PARTIES AT ASU."

25.     On or about July 20, 2020, the account began promoting "our first party" which it named "Hoax-19," as depicted below:



26.     The following day, July 21, 2020, "asu_covid.parties" posted another message claiming "COVID-19 is a fat hoax," as shown below:



27.     Thereafter, "asu_covid.parties" posted another message, again including the ARIZONA STATE UNIVERSITY mark immediately below the username and claiming that "We have partnered with an Israeli company to distribute hydrochloroquine! All Profits of the party will go to helping people in other countries get hydrochloroquine to treat COVID-19!" A true and correct copy of this post, which indicates the commercial nature of the advertised "Hoax-19" party and falsely asserts a partnership between ASU or an ASU related entity and an Israeli company identified in the comments as Teva Pharmaceuticals to distribute hydrochloroquine, a highly controversial drug, appears below:

28.     Other posts by "asu_covid.parties" encourage against wearing masks, which directly contradicts and undermines and interferes with the actual health related message, consistent with the local law that mandates wearing of masks at this time, and that ASU is attempting to provide to its students and the community:





29.     As a function of the Instagram platform, every Instagram post may be viewed not only by those who follow the account on which the post has first been published, but every post also can be shared (and thus further distributed) by anyone through a variety of means, including without limitation, by a sending a direct message to another user on Instagram, by sharing it to a Facebook account, by sending it via Facebook messenger, by tweeting the post on Twitter, by sending the post via an e-mail message, and by copying and pasting a hyperlink to the post in any other medium.

30.     As a result, the unauthorized use of the ASU Marks and trade dress in connection with the "asu_covid.parties" username and posts are likely to cause confusion as to whether ASU is affiliated with, endorses, and/or sponsors this Instagram account, its messaging that could result in dangerous public health consequences if followed by others, and the "Hoax-19" covid party that is being promoted through this account.

31.     In fact, on July 24, 2020, the individual owner of the Twitter account "teach0r" claimed he would be stopping his alumni membership because "ASU having COVID parties and claiming it's a hoax?!":



<u>"asu_covid.parties" False and Offensive Statements About ASU</u>

32.     In addition to the instances of infringement of the ASU Marks and trade dress, the John Doe defendant has engaged in a series of offensive and false statements about ASU.

33.     The account has posted objectively false statements and information about ASU, including, for example, the following post in which it claims that the account owner has "won the battle in court" and that ASU has been ordered to pay its legal fees plus $500,000 in damages:



34.     No such lawsuit or claim or judgment for damages exists.

35.     If that were not enough, in several posts the owner of this account portrays ASU and its leadership as Nazis, referring to ASU's President Crow as Führer Crow and comparing ASU's mask requirement to forcing Jews to wear a yellow Star of David.

36.     Upon information and belief, these false and offensive posts are calculated to injure ASU's reputation and the goodwill associated with the famous ASU Marks.

<u>Facebook/Instagram's Contributory Infringement</u>

37.     Facebook provides its Instagram social media platform and service to the John Doe defendant for the "asu_covid.parties" Instagram account.

38.     In offering the Instagram service, Facebook has implemented a robust set of terms of use, policies and community guidelines governing the use of that service, including ones that are directly related to the COVID pandemic.  Among other things, the Instagram terms of use provide as follows:

- **Fostering a positive, inclusive, and safe environment.**
  We develop and use tools and offer resources to our community members that help to make their experiences positive and inclusive, including when we think they might need help. We also have teams and systems that work to combat abuse and violations of our Terms and policies, as well as harmful and deceptive behavior.

- **How You Can't Use Instagram.** Providing a safe and open Service for a broad community requires that we all do our part.

- **You can't impersonate others or provide inaccurate information.**
  You don't have to disclose your identity on Instagram, but you must provide us with accurate and up to date information (including registration information). Also, you may not impersonate someone you aren't, and you can't create an account for someone else unless you have their express permission.

- **You can't do anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose.**

- **You can't violate (or help or encourage others to violate) these Terms or our policies, including in particular the Instagram Community Guidelines, Instagram Platform Policy, and Music Guidelines.**

- **Permission to use your username, profile picture, and information about your relationships and actions with accounts, ads, and sponsored content.**
  You give us permission to show your username, profile picture, and information about your actions (such as likes) or relationships (such as follows) next to or in connection with accounts, ads, offers, and other sponsored content that you follow or engage with that are displayed on Facebook Products, without any compensation to you.

  **Additional Rights We Retain**
- If you select a username or similar identifier for your account, we may change it if we believe it is appropriate or necessary (for example, if it infringes someone's intellectual property or impersonates another user).

A true and correct copy of the current Instagram Terms of Use are attached as Exhibit 5.

39.     Instagram's Community Guidelines, among other things, proclaim Instagram's desire to "protect people from harmful content" to "remove content that has the potential to contribute to real-world harm" and reiterate the right and ability of Facebook to monitor and control the content posted on the Instagram services:

**Community Guidelines**

***COVID-19: Community Guidelines Updates and Protections:*** *As people around the world confront this unprecedented public health emergency, we want to make sure that our Community Guidelines protect people from harmful content and new types of abuse related to COVID-19. We're working to remove content that has the potential to contribute to real-world harm, including through our policies prohibiting coordination of harm, sale of medical masks and related goods, hate speech, bullying and harassment and misinformation that contributes to the risk of imminent violence or physical harm. As the situation evolves, we continue to look at content on the platform, assess speech trends, and engage with experts, and will provide additional policy guidance when appropriate to keep the members of our community safe during this crisis.*

- We created the Community Guidelines so you can help us foster and protect this amazing community. By using Instagram, you agree to these guidelines and our Terms of Use. We're committed to these guidelines and we hope you are too. Overstepping these boundaries may result in deleted content, disabled accounts, or other restrictions.

- You don't have to use your real name on Instagram, but we do require Instagram users to provide us with accurate and up to date information. Don't impersonate others and don't create accounts for the purpose of violating our guidelines or misleading others.

- **Respect other members of the Instagram community.**
  We want to foster a positive, diverse community. We remove content that contains credible threats or hate speech, content that targets private individuals to degrade or shame them, personal information meant to blackmail or harass someone, and repeated unwanted messages.

- Serious threats of harm to public and personal safety aren't allowed. This includes specific threats of physical harm as well as threats of theft, vandalism, and other

16

financial harm. We carefully review reports of threats and consider many things when determining whether a threat is credible.

- Each of us is an important part of the Instagram community. If you see something that you think may violate our guidelines, please help us by using our **built-in reporting option**. We have a global team that reviews these reports and works as quickly as possible to remove content that doesn't meet our guidelines. Even if you or someone you know doesn't have an Instagram account, you can still **file a report**. When you complete the report, try to provide as much information as possible, such as links, usernames, and descriptions of the content, so we can find and review it quickly. We may remove entire posts if either the imagery or associated captions violate our guidelines.

A true and correct copy of the current Instagram Community Guidelines are attached as Exhibit 6.

40.     The Instagram terms of use and community guidelines demonstrate that Facebook retains substantial control over the Instagram service and an ability to monitor and remove infringing and other harmful content.

41.     On August 12, 2020, undersigned counsel on behalf of ASU submitted a trademark infringement report identifying the federally registered ASU Marks as being infringed by the "asu_covid.parties" account.  A true and correct copy of the report is attached as **Exhibit 7**.

42.     On August 14, 2020, Instagram responded that "the reported party appears to be using your trademark to refer to or comment on your goods and services" and that it would not take any action regarding this account.  A true and correct copy of Instagram's response is attached as **Exhibit 8**.  As shown in paragraphs 21-26 above, Instagram's response mischaracterized the account's use of the ASU Marks because neither the account profile nor any of the specifically referenced posts refer to or comment on any of ASU's goods or services.

43.     That same day, undersigned counsel responded to Instagram highlighting the specific examples of infringement.  Furthermore, he pointed out Instagram's own Community

Guidelines, which Instagram claims is intended to "protect people from harmful content and new types of abuse related to Covid-19," and to prohibit "misinformation that contributes to the risk of . . . physical harm," as well has hate speech.  A true and correct copy of that submission is attached as **Exhibit 9.**

44.     Despite these specific examples of the infringement of the ASU Marks and violations of Instagram's own terms of use and community guidelines, Instagram responded on August 17, 2020 that it would not act on the report to remove or modify any aspect of the "asu_covid.parties" account.  A true and correct copy of Instagram's response is attached as **Exhibit 10**.

45.     Instead, Facebook continues to provide its Instagram service to "asu_covid.parties" which account is being used to infringe ASU's rights and in violation of the Instagram terms of use and community guidelines.   As such, Facebook is contributing to the ongoing infringement being committed by "asu_covid.parties."

## Count One
### (Trademark Infringement – 15 U.S.C. §1114 –
### as to the "asu_covid.parties" account owner)

46.     ASU incorporates the allegations in paragraphs 1- 45 as if fully set forth.

47.     Describing itself as an "Event Planner" in its Instagram profile, the account owner has used the ASU Marks in commerce within its username and its Instagram posts to promote what it calls a "Hoax-19" covid party, the profits from which it claims will be used to acquire hydrochloroquine to treat Covid-19.

48.     The posts promoting this party are likely to cause confusion as to ASU's affiliation, endorsement, and/or sponsorship of the event, and the messages associated with the event, especially where such posts are separately and independently viewed, shared, and/or retransmitted by others from the Instagram service.

49.     These posts do not describe, refer to, or comment upon any genuine events or other services being offered by ASU.

50.     ASU has not authorized the use of the ASU Marks in connection with the "asu_covid.parties" Instagram account.

51.     ASU have been damaged and will continue to be irreparably harmed by these and other such posts unless they are enjoined.

52.     Upon information and belief, the "asu_covid.parties" account owner has infringed upon the ASU marks willfully and deliberately and acted with intent to cause confusion.

## Count Two

**(False Designation of Origin and False Advertising – 15 U.S.C. §1125 – as to the "asu_covid.parties" account owner)**

53.     ASU incorporates the allegations in paragraphs 1- 52 as if fully set forth.

54.     In connection with the promotion of the "Hoax-19" party event, the "asu_covid.parties" account owner has used the ASU Marks, school colors trade dress, and other false or misleading descriptions and/or representations of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the "asu_covid.parties" account with ASU, or as to the origin, sponsorship, or approval of the Hoax-19 party event and related messaging by ASU.

55.     Upon information and belief, in connection with its commercial promotion of the "Hoax-19" party event, the "asu_covid.parties" account owner has misrepresented the nature, characteristics, qualities, or geographic origin of his or her services and/or commercial activities, including without limitation, by claiming that the party will be held at a consulate in Tempe, Arizona, which does not exist, and by falsely claiming the existence of a partnership with Teva Pharmaceuticals to distribute hydrochoroquine to people for treatment of Covid-19.

56. ASU have been damaged and will continue to be irreparably harmed by these and other such posts unless they are enjoined.

57. Upon information and belief, the "asu_covid.parties" has acted willfully and deliberately and with intent to cause harm to ASU.

## Count Three
### (Contributory Infringement as to Facebook)

58. ASU incorporates the allegations in paragraphs 1- 57 as if fully set forth.

59. By reason of the trademark infringement reports submitted by ASU's counsel, Facebook has actual knowledge of the infringement and unauthorized use of the ASU Marks and school color trade dress by the "asu_covid.parties" Instagram account.

60. Facebook maintains a substantial extent of control over the Instagram platform and service through its terms of use and community guidelines, including but not limited to the right to disable and terminate accounts engaging in the infringement of other's trademark rights.

61. At a minimum, Facebook has remained willfully blind to the specific instances of infringement in the face of ASU's infringement reports and is allowing the infringement to continue unabated.

62. Facebook's actions are causing harm to ASU and will continue to cause irreparable harm if not enjoined from continuing to provide the Instagram service to the "asu_covid.parties" account.

63. Facebook's actions constitute contributory infringement of ASU's federally registered ASU Marks.

64. ASU is entitled to injunctive relief, damages, and/or the disgorgement of profits attributable to the contributory infringement.

## Count Four
### (Trademark Dilution – A.R.S. 44-1448.01 –

**as to the "asu_covid.parties" account owner/John Doe defendant)**

65.     ASU incorporates the allegations in paragraphs 1-57 as if fully set forth.

66.     The ASU Marks became famous in Arizona long before the "asu_covid.parties" Instagram account was created.

67.     As alleged herein, the John Doe defendant has engaged in the commercial use of the ASU Marks to promote a "covid party" for which it acknowledges there will be profits, and hence it is a commercial venture.

68.     The John Doe defendant's actions have caused and will continue dilution of the distinctive quality of the ASU Marks.

69.     Upon information and belief, the John Doe defendant wilfully intended to trade on ASU's reputation or otherwise to cause dilution of the ASU Marks.

70.     ASU is entitled to injunctive relief, damages, and/or the disgorgement of profits attributable to the dilution.

### Count Five
### (Unfair Competition under Arizona Law –
### as to the "asu_covid.parties" account owner/John Doe defendant)

71.     ASU incorporates the allegations in paragraphs 1- 57 as if fully set forth.

72.     The John Doe defendant's actions constitute unfair competition under Arizona law.

73.     ASU has been damaged and will continue to be irreparably harmed by the John Doe defendant's unfair competition, unless enjoined by the Court.

74.     ASU is entitled to damages arising from the John Doe defendant's actions.

### JURY TRIAL DEMAND

ASU demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

ASU prays for the following relief:

A.      A judgment in favor of Plaintiff against the John Doe defendant on Counts One, Two, Four, and Five for trademark infringement, false designation of origin, trademark dilution, and unfair competition;

B.      A finding that the ASU and ARIZONA STATE UNIVERSITY trademarks are famous under A.R.S. 44-1448.01 and that the John Doe defendant wilfully intended to trade on ASU's reputation or to cause dilution of ASU's famous marks;

C.      A judgment in favor of Plaintiff and against Facebook on Count Three for contributory infringement of the ASU and ARIZONA STATE UNIVERSITY marks and trade dress;

D.      A temporary, preliminary and permanent injunction against Defendants enjoining the further use of the ASU and ARIZONA STATE UNIVERSITY trademarks and trade dress;

E.      Damages in an amount to be proved at trial;

F.      An award of profits derived from the infringement and false advertising;

G.      A finding that this case is an exceptional case under 15 U.S.C. §1117 and an award of Plaintiff's reasonable attorney's fees;

H.      An award against the John Doe defendant for damages and profits arising out of the willful dilution of the ASU Marks;

I.      An award of Plaintiff's costs in bringing this action;  and

J.      Such other relief as the Court deems just.

1

VERIFICATION

2

3      I, Ann Toca, am authorized to make this Verification on behalf of Plaintiff Arizona

4  Board of Regents for and on behalf of Arizona State University, a body corporate.  I have

5  read the Verified Complaint and declare under penalty of perjury that the factual allegations

6  made herein are true and correct, and for those allegations made upon information and belief,

7  and I believe them to be true.

8

9

10  EXECTED THIS 20TH DAY OF AUGUST IN TEMPE, ARIZONA.

11

12  _____

13

14  ANN TOCA
   Chief Marketing Officer

15

16

17

18

19

20

21

22

23

24

25

26

RESPECTFULLY SUBMITTED this 20th day of August, 2020.

By      /s/ Sean D. Garrison

**Glenn S. Bacal** (AZ Bar No. 006812)
E-mail:  glenn.bacal@bacalgroup.com
**Sean D. Garrison** (AZ Bar No. 014436)
E-mail:  sean.garrison@bacalgroup.com
Direct Dial: 480-719-8501
**BACAL LAW GROUP, P.C., DBA**
**BACAL & GARRISON LAW GROUP**
6991 East Camelback Road, Suite D-102
Scottsdale, Arizona 85251
Fax: (480) 245-6231

*Attorneys for Plaintiff Arizona Board of Regents,*
*for and on behalf of Arizona State University*