**Glenn S. Bacal** (AZ Bar No. 006812)
E-mail: glenn.bacal@bacalgroup.com
**Sean D. Garrison** (AZ Bar No. 014436)
E-mail: sean.garrison@bacalgroup.com
Direct Dial: 480-719-8501
**BACAL LAW GROUP, P.C., DBA**
**BACAL & GARRISON LAW GROUP**
6991 East Camelback Road, Suite D-102
Scottsdale, Arizona  85251
Fax: (480) 245-6231

*Attorneys for Plaintiff for Plaintiff Arizona Board of Regents,*
*for and on behalf of Arizona State University*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Board of Regents, a body corporate, for and on behalf of Arizona State University,<br><br>Plaintiff,<br><br>v.<br><br>John Doe aka "asu_covid.parties", an individual, and Facebook, Inc., a Delaware corporation<br><br>Defendants. | Case No.<br><br>**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER WITH NOTICE AND PRELIMINARY INJUNCTION** |

## INTRODUCTION

As the COVID-19 pandemic continues to plague the United States, total confirmed cases have surpassed 5 million and confirmed deaths have exceeded 170,000 people nationwide.  As students return to campus, colleges and universities in other parts of the country have experienced significant COVID-19 outbreaks among their student populations and are grappling with the challenges of trying to keep their communities safe.  The possibility of large off-campus parties becoming super-spreader events for the virus are of particular concern for colleges, universities, and their surrounding communities.

Against that background, Plaintiff Arizona Board of Regents, a body corporate, for and on behalf of Arizona State University ("ASU") has discovered that its ASU and ARIZONA STATE UNIVERSITY federally registered trademarks (the "ASU Marks") and school colors trade dress are currently being used without authorization by an Instagram account with the username "asu_covid.parties" to promote a so-called "Hoax-19" COVID party to ASU students. The account owner states this party will be held somewhere in Tempe shortly after fall semester classes resume. Undermining ASU's genuine efforts to resume the semester in as safe an environment as possible, "asu_covid.parties" is proclaiming that Covid-19 is "a big fat hoax," and spreading dangerous misinformation about Covid-19 just as students are returning to ASU's campuses to begin classes. COVID parties have been recognized virtually universally as being very dangerous.[1] Initial indications suggest this account may be controlled by one or more individuals in Russia attempting to sow confusion and conflict and to interfere with the health of the ASU community by trying to worsen the pandemic here. This unauthorized use of ASU's trademarks and trade dress not only harms ASU, but if not immediately enjoined is also likely to endanger the health and safety of the university community.

Because of the serious public health issues involved here, and pursuant to Fed. R. Civ. P. 65, ASU seeks a temporary restraining order and preliminary injunction to prohibit the "asu_covid.parties" account holder (i) from using the ASU Marks and the maroon and gold school colors trade dress as part of any account username, profile name, profile picture, and/or bio

---

[1] *See, e.g.,* COVID Parties: Yes, They Are Real and Wildly Dangerous  https://theamericanonews.com/2020/07/02/covid-parties/; Here's Why You Shouldn't Go To A 'Covid Party'  https://www.forbes.com/sites/robertglatter/2020/07/12/covid-parties-should-you-go-to-one/#1833a7ef2249 ; Texas Hospital Says Man, 30, Died After Attending a 'Covid Party' https://www.nytimes.com/2020/07/12/us/30-year-old-covid-party-death.html; Texas doctor warns against deadly 'COVID parties' after patient dies https://www.houstonchronicle.com/news/houston-texas/texas/article/texas-doctor-covid-party-death-methodist-hospital-15404836.php; COVID Parties' Spark Outrage As More Hospital Beds Go To Youths https://patch.com/california/los-angeles/covid-parties-spark-outrage-more-hospital-beds-go-youths.

description, and (ii) from using the ASU Marks and the maroon and gold school colors trade dress in connection with the promotion of any parties, events, or other goods and services. ABOR also seeks relief against Facebook, Inc., the owner and operator of the Instagram platform and service, temporarily and preliminarily enjoining it from continuing to provide any services to the "asu_covid.parties" account holder as a means for infringing upon the ASU Marks and school colors trade dress.

This Motion is supported by the Verified Complaint ("Verified Complaint") and the following Memorandum of Facts and Law.

<u>MEMORANDUM OF FACTS AND LAW</u>

**MATERIAL FACTS**

ASU is the State of Arizona's largest university, with its largest campus located in Tempe, Arizona. (Verified Complaint, ¶1). Founded in 1885, ASU became known as Arizona State University in 1958 and has continuously operated under the ASU and ARIZONA STATE UNIVERSITY trademarks ever since then. (Ver. Comp., ¶9) These trademarks are federally registered for a variety of different goods and services, including but not limited to providing entertainment events. (Ver. Comp., ¶10 and Exhibit 1) The federal registrations for the ASU Marks have become incontestable, which constitutes conclusive proof of ASU's ownership and exclusive right to use the ASU Marks. (Id.; 15 U.S.C. §1115(b). ASU also owns trade dress rights in its maroon and gold school colors, which it has been using extensively since at least as early as 1898. (Ver. Comp., ¶ 11).

ASU is one of the largest universities in the country, with more than 48,600 students having applied as incoming first-year students to ASU for the fall 2019 semester. (Ver. Comp., ¶14) ASU accepted 85% of student applicants in fall 2019 and welcomed its largest ever class of 13,168 first year students. (Id.) In total, almost 120,000 students enrolled at ASU in the fall of 2019. (Id.) Total enrollment has continued to increase year over year, exceeding 100,000 students each year since the fall of 2017. (Id.)

ASU has received numerous and prestigious honors. U.S. News & World Report rates 98 undergraduate and graduate programs at ASU among the top 50 in the country, including 64 programs in the top 25 and 22 programs in the top 10. (Ver. Comp., ¶ 15) ASU has now held the No. 1 ranking for innovation five years in a row. (Id.)

ASU is one of Arizona's largest employers with more than 17,000 employees. (Ver. Comp., ¶16) In 2018, approximately 250,000 ASU graduates worked in Arizona. (Ver. Comp., ¶17) In Fiscal Year 2019, the university generated an economic impact of nearly $4 billion on the state's gross product and 49,278 jobs. (Ver. Comp., ¶18)

At the close of its 2019 fiscal year, more than 101,500 individual, corporate and foundation supporters had donated to ASU. (Ver. Comp., ¶ 19) ASU received a record-breaking $413.7 million in philanthropic support from these donors throughout Arizona and the world in 2019 for its academic programs, research and initiatives. (Id.)

ASU has a rich athletic tradition, and the ASU Marks are used prominently to identify the athletics program. ASU's teams and individual student athletes have won hundreds of national titles, and ASU was named the No. 1 college athletic program by Sports Illlustrated for 2007-2008. (Ver. Comp., ¶ 20).

ASU plans, holds, sponsors, and promotes numerous events each year on its campuses and within the surrounding communities, including but not limited to events for incoming and returning students. (Ver. Comp., ¶ 21) ASU regularly maintains an events page on its website (https://asuevents.asu.edu/) to promote certain of these events. (Ver. Comp., ¶ 22) In the current Covid-19 environment, all events not directly related to the educational or research mission of the university have been canceled. (Id.)

ASU receives extensive unsolicited media coverage and invests substantial sums in advertising and promoting its educational programs, services, athletic programs and sponsored events to students, prospective students, alumni and the general public under the ASU Marks and trade dress. (Ver. Comp., ¶ 12)

As a result of this longstanding use, exposure and promotion of the ASU Marks, these marks and trade dress have become famous in Arizona and extremely well known and well regarded throughout the United States and the world. (Ver. Comp., ¶ 13)

<u>The "asu_covid.parties" infringement</u>

On or about July 19, 2020, defendant John Doe, whose true identity and location are currently unknown, created an Instagram account with the username "asu_covid.parties" and posted the following message:



In addition to using the ASU mark as the first part of the account username "asu_covid.parties," the John Doe defendant included the ARIZONA STATE UNIVERSITY mark immediately below the username on the post (circled above), an ASU logo within the body of the message, and formatted the post in ASU's maroon and gold school color trade dress. As posted, the message falsely appears to originate from ASU or an account associated with ASU. (Ver. Comp., ¶ 23 and **Exhibit 4**).

As shown below, the username and account profile misleadingly suggest that this account is associated with ASU, even though it is not. The profile name is "ASU Coronavirus Parties" and the owner categorizes itself as an "Event Planner" "THROWING

HUGE PARTIES AT ASU," which reflects its commercial nature. (Ver. Comp., ¶ 24 and **Exhibit 4**)



On or about July 20, 2020, the account began promoting "our first party" which it named "Hoax-19," and claiming "COVID-19 is a fat hoax," as depicted in the 2 posts below:



(Ver. Comp., ¶ 25-26 and **Exhibit 4**)

Thereafter, "asu_covid.parties" posted another message, again including the ARIZONA STATE UNIVERSITY mark immediately below the username (circled below)and claiming that "We have partnered with an Israeli company to distribute hydrochloroquine! All Profits of the party will go to helping people in other countries get hydrochloroquine to treat COVID-19!" A true and correct copy of this post, which indicates the commercial nature of the advertised "Hoax-19" party and falsely asserts a partnership between ASU or an ASU related entity and an Israeli company identified in the comments as Teva Pharmaceuticals (circled below) to distribute hydrochloroquine, a highly controversial drug, appears below:



1
2
3
4
5
6
7
8
9
10 (Ver. Comp., ¶ 27 and **Exhibit 4**)

11 Other posts by "asu_covid.parties" discourage wearing masks, which directly
12 contradicts, undermines, and interferes with the actual health related message, consistent
13 with the local law that mandates wearing of masks at this time, that ASU is attempting to
14 provide to its students and the community. (Ver. Comp., ¶ 28 and **Exhibit 4**)

15 As a function of the Instagram platform, every Instagram post may be viewed not
16 only by those who follow the account on which the post has first been published, but every
17 post also can be shared (and thus further distributed) by anyone through a variety of means,
18 including without limitation, by a sending a direct message to another user on Instagram, by
19 sharing it to a Facebook account, by sending it via Facebook messenger, by tweeting the post
20 on Twitter, by sending the post via an e-mail message, and by copying and pasting a
21 hyperlink to the post in any other medium. (Ver. Comp., ¶ 29)

22 As a result, the unauthorized use of the ASU Marks in connection with the
23 "asu_covid.parties" username, profile and posts are likely to cause confusion as to whether
24 ASU is affiliated with, endorses, and/or sponsors this Instagram account, its messaging that
25 could result in dangerous public health consequences if followed by others, and the "Hoax-
26 19" covid party that is being promoted through this account. (Ver. Comp., ¶ 30)

"asu_covid.parties" False and Offensive Statements About ASU

In addition to the instances of infringement of the ASU Marks, the John Doe defendant has engaged in a series of offensive and false statements about ASU.  The account has posted objectively false statements and information about ASU, including, for example, the following post in which it claims that the account owner has "won the battle in court" and that ASU has been ordered to pay its legal fees plus $500,000 in damages.  (Ver. Comp., ¶ 33 and **Exhibit 4**)  No such lawsuit or claim for damages exists.  (Ver. Comp., ¶ 34)  If that were not enough, in several posts the owner of this account portrays ASU and its leadership as Nazis, referring to ASU's President Crow as Fuhrer Crow and comparing ASU's mask requirement to forcing Jews to wear a yellow Star of David. (Ver. Comp., ¶ 35 and Exhibit 2)  These false and offensive posts appear to be calculated to injure ASU's reputation and the goodwill associated with the famous ASU Marks.  (Ver. Comp., ¶ 36).

Facebook/Instagram's Contributory Infringement

Facebook provides its Instagram social media platform and service to the John Doe defendant for the "asu_covid.parties" Instagram account.  (Ver. Comp., ¶ 37)  In offering the Instagram service, Facebook has implemented a robust set of terms of use, policies and community guidelines governing the use of that service.  (Ver. Comp., ¶¶ 38-39 and **Exhibits 5 and 6**).  Instagram's terms of use and community guidelines, which explicitly reference COVID-19, proclaim Instagram's desire to "protect people from harmful content" to "remove content that has the potential to contribute to real-world harm" and reiterate the right and ability of Facebook to monitor and control the content posted on the Instagram services, including but not limited to changing usernames, deleting posts, and disabling accounts.  (Id.)

On August 12, 2020, undersigned counsel on behalf of ASU submitted a trademark infringement report using Instagram's reporting tool and identifying the federally registered ASU Marks as being infringed by the "asu_covid.parties" account.  (Ver Comp. ¶ 41 and

1  **Exhibit 7**). On August 14, 2020, Instagram responded that "the reported party appears to be using your trademark to refer to or comment on your goods and services" and that it would not take any action regarding this account. . (Ver Comp. ¶ 42 and **Exhibit 8**). Instagram's response mischaracterized the account's use of the ASU Marks because neither the account profile nor any of the referenced posts refer to or comment on any of ASU's goods or services. (Id.)

That same day, undersigned counsel responded to Instagram highlighting the specific examples of infringement. (Ver. Comp., ¶ 43 and **Exhibit 9**) Furthermore, he pointed out Instagram's own Community Guidelines, which Instagram claims is intended to "protect people from harmful content and new types of abuse related to Covid-19," and to prohibit "misinformation that contributes to the risk of . . . physical harm," as well has hate speech. . (Id.) Despite these specific examples of the infringement of the ASU Marks and violations of Instagram's own terms of use and community guidelines, Instagram responded on August 17, 2020 that it would not act on the report to remove or modify any aspect of the "asu_covid.parties" account. . (Ver Comp. ¶ 44 and **Exhibit 10**). Instead, Facebook continues to provide its Instagram service to "asu_covid.parties" which account is being used for the infringement of ASU rights and, as explained below, is liable for contributing to the ongoing infringement being committed by "asu_covid.parties." (Ver. Comp., ¶ 45).

**LEGAL ARGUMENT**

I.  LEGAL STANDARD FOR A TRO AND PRELIMINARY INJUNCTION

"The standard for issuing a TRO is the same as that for issuing a preliminary injunction." *Spears v. Arizona Bd. of Regents*, 372 F. Supp. 3d 893, 926 (D. Ariz. 2019); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis for a temporary restraining order is "substantially identical" to the analysis for a preliminary injunction). To obtain a preliminary injunction, the plaintiff must prove "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is also appropriate when a plaintiff raises "serious questions" as to the merits and "the balance of hardships tips sharply in [plaintiff's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1135 (9th Cir. 2011).

II.  ASU IS LIKELY TO SUCCEED ON THE MERITS

A.  Federal Trademark Infringement and False Designation of Origin

A claim for trademark infringement requires only two elements: (1) ownership of a trademark and (2) a likelihood of confusion caused by the defendant. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014), as amended (Mar. 11, 2014). A claim for false designation of origin under 15 U.S.C. § 1125(a) requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114. *See Monster Energy Co. v. BeastUp LLC*, 395 F. Supp. 3d 1334, 1349–50 (E.D. Cal. 2019) (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999).

Because they are incontestable, the federal registrations of the ASU Marks are conclusive evidence of ASU's ownership and exclusive right to use the ASU Marks. 15 U.S.C. § 1115(b). These registrations became incontestable long before the John Doe defendant's creation of the "asu_covid.parties" Instagram account. Furthermore, university school colors constitute protectable trade dress. *See Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) ("By associating the color and other indicia with the university, the fans perceive the university as the source or sponsor of the goods because they want to associate with that source.") Thus, the first element is established.

In the Ninth Circuit, likelihood of confusion is evaluated using the following factors: (1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's

intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014). Not all factors are relevant in every case. "Because the factors are fluid, a plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Id*. (internal quotations and citation omitted). Here, virtually all of the factors weigh heavily in favor of likely confusion.

*(1) The ASU Marks and Maroon and Gold School Color Trade Dress are strong*

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Brookfield,* 174 F.3d at 1058. By virtue of ASU's longstanding and widespread use and substantial promotion of the ASU Marks and color trade dress, and their widespread exposure and impact on the community, the ASU Marks and trade dress are strong. (Ver. Comp., ¶¶ 11-22)

*(2) Proximity and relatednesss of the goods*

The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield,* 174 F.3d at 1055. The "asu_covid.parties" account owner is promoting a "Hoax-19" party to ASU students that it claims will take place in Tempe, Arizona, which is also the location of ASU's largest campus. ASU routinely holds events for its students as part of its educational mission, including social events to welcome students back to campus. Accordingly, this factor weighs in favor of finding a likelihood of confusion.

*(3) Similarity of the marks*

"[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield,* 174 F.3d at 1054. The account owner is using the ASU mark in its username ("asu_covid.parties") and profile ("ASU Covid Parties") and has repeatedly used

the ARIZONA STATE UNIVERSITY mark as its profile name in connection with multiple posts on its Instagram account. Because they are using ASU's exact marks, confusion is more likely.

*(4) Marketing channels*

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. Here, the defendant's only marketing channel is Instagram. ASU operates its official Instagram account with the username "arizonastateuniversity" that also prominently features the ASU mark. The marketing channels therefore overlap, which increases the likelihood of confusion. A casual user, upon seeing the "asu_covid.parties" username on Instagram is likely to assume it is somehow associated with ASU.

*(5) Evidence of Actual Confusion*

Although evidence of actual confusion is not required, where such evidence exists, it is persuasive proof of a likelihood of confusion. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000). ASU is aware of a tweet, which indicates that the "asu_covid.parties" account in causing actual confusion. In it, an alumnus is threatening to surrender his membership because of an apparent belief that ASU is promoting covid parties. (Ver. Comp., ¶ 31) Thus, this factor weighs in favor of a likelihood of confusion.

*(6) Defendant's Intent*

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft,* 599 F.2d at 354. It is clear from the very first post on the "asu_covid.parties" Instagram account, that the owner used the ASU Marks intentionally to use the goodwill associated with them to sow confusion. As shown on page 5 above, that post was created to give every appearance of a genuine post from ASU, including the use of the ARIZONA STATE UNIVERSITY mark, an ASU logo, and the maroon and gold school colors trade dress.

Weighing all the relevant factors, the Court should conclude that a likelihood of confusion exists and that ASU is likely to succeed on the merits of its infringement and false designation of

origin claims under 15 U.S.C. §§ 1114 and 1125(a)(1)(A). Furthermore, even if a consumer were to conclude, after reading one or more posts by "asu_covid.parties" that the account is not affiliated with ASU, there is nevertheless actionable initial interest confusion in the sense that "asu_covid.parties" improperly benefits from the goodwill developed in the ASU Marks. *See Brookfield*, 174 F.3d at 1062.

### B    False Advertising

To prevail on its claim under 15 U.S.C. §1125(a)(1)(B), ASU must prove (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

On July 29, the John Doe defendant posted an ad for its party falsely asserting a partnership between ASU or an ASU related entity and an Israeli company identified in the comments as Teva Pharmaceuticals to use profits from the party to distribute hydrochloroquine, a highly controversial drug. (Ver. Comp., ¶ 26). Other posts assert this party will be hosted at a consulate in Tempe and registered with the City as a protest, which claims are believed to be false. (Ver. Comp. Exhibit 2). These statements have the tendency to deceive and would be material to persons wanting to attend the party without incurring potential discipline and/or who believe distributing hydrochloroquine has merit. ASU is likely to be injured by these false statements by the negative impact the party would likely have on the goodwill associated with the ASU Marks.

C. Arizona Trademark Dilution

To prevail on its state law claim for trademark dilution, ASU must prove that (1) the ASU Marks are famous in Arizona; (2) the defendant has engaged in the commercial use of the marks; (3) the defendant's use began after the ASU Marks became famous in Arizona; (4) and the defendant's use of the marks is likely to cause dilution by blurring or dilution by tarnishment. *See* A.R.S. 44-1448.01; *Moab Indus., LLC v. FCA US, LLC* 2016 WL 5859700, at *8 (D. Ariz. Oct. 6, 2016). A finding of likely confusion by consumers is not required.

The evidence of the longstanding and widespread use of the ASU Marks and trade dress by ASU demonstrates those marks are famous in Arizona and became famous before the John Doe defendant created the "asu_covid.parties" Instagram account. In promoting COVID parties, from which the defendant claims profits will be generated, while otherwise disparaging the University, the defendant has engaged in a commercial use of the ASU Marks that is likely to dilute and tarnish the goodwill associated with the ASU Marks and trade dress.

D. Contributory Infringement Against Facebook

To prevail on its claim for contributory infringement against Facebook, ASU must demonstrate that Facebook had knowledge of the infringement and direct control and monitoring of the service used by the "asu_covid.parties" account owner to infringe the ASU Marks. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F.Supp.2d 1098, 1111 (2008); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir.1999). These elements are easily met here. First, Facebook had knowledge of the infringement because ASU directly provided that knowledge in its trademark infringement reports, which Facebook chose to disregard. Second, Facebook's own terms of use and community guidelines establish its control and monitoring of the Instagram service, including but not limited to where Facebook asserts that

- If you select a username or similar identifier for your account, we may change it if we believe it is appropriate or necessary (for example, if it infringes someone's intellectual property or impersonates another user).

- We also have teams and systems that work to combat abuse and violations of our Terms and policies, as well as harmful and deceptive behavior.
- We're working to remove content that has the potential to contribute to real-world harm
- By using Instagram, you agree to these guidelines and our Terms of Use. We're committed to these guidelines and we hope you are too. Overstepping these boundaries may result in deleted content, disabled accounts, or other restrictions.

Simply put, Facebook could have done the right thing and disabled the "asu_covid.parties" account when ASU reported the infringement. It chose instead to continue to provide the Instagram service to this account and allow the infringement to continue. ASU is therefore likely to prevail on its contributory infringement claim.

### III. ASU HAS SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM

Not only is ASU likely to prevail on its claims, but the evidence also demonstrates that ASU is likely to suffer irreparable harm if the Court does not enjoin the Defendants. "Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners." *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009), *aff'd*, 348 Fed. Appx. 288 (9th Cir. 2009). It is well settled that the loss of control over one's reputation and good will is itself an irreparable injury that satisfies the requirements for granting a preliminary injunction:

> If Defendant uses Plaintiff's mark, Defendant "borrows the [Plaintiff's] reputation, whose quality no longer lies within [Plaintiff's] own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use" and "creates the potential for damage to [Plaintiff's] reputation. Potential damage to reputation constitutes irreparable injury for the purpose of granting [Plaintiff's request for] a preliminary injunction . .

*Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*, 156 F.Supp.3d 1173, 1185 (E.D. Cal. 2016) (quoting *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 195 (3d Cir. 1990)); *see also Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 (9th Cir.2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."). ASU's loss of control to prevent the

association of its Marks and trade dress with COVID parties and related messaging that undermines the health and safety of the ASU community, as well as to prevent any association with Nazi references or the false implication that tuition money might be used to pay court judgments constitutes irreparable harm.

## IV.   THE BALANCE OF EQUITIES FAVORS AN INJUNCTION

Any inconvenience the defendants may experience as a result of the injunction is a matter of their own doing. *See Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (a party "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities.")  Whereas the unauthorized and uncontrolled use of the ASU Marks and trade dress puts ASU's reputation and associated goodwill at risk, requiring the "asu_covid.parties" account owner not to use them poses no hardship at all.  Likewise, Facebook can complain of no hardship in light of its own terms of use and community guidelines, which give it the right to delete content, change usernames, and disable accounts.  It is what Facebook should have done voluntarily in the first instance.  The balance of hardships clearly favors the entry of a TRO and preliminary injunction.

## V.   THE PUBLIC INTEREST FAVORS AN INJUNCTION

"The 'public interest favors elimination of consumer confusion' caused by trademark infringement." *TMC Franchise Corp. v. Millennium Vision, LLC*, 2011 U.S. Dist. LEXIS 3849, *4 (D. Ariz.  January 6, 2011) (granting preliminary injunction against the former owners of a Circle K franchised location).  Even more importantly in this case, an injunction would serve the health and safety of the public by eliminating any chance of a perception by students or others in the community that the State's largest university somehow supports, endorses or is affiliated with COVID parties and the related messaging promoted by the "asu_covid.parties" Instagram account.

16

VI. **BOND**

Pursuant to Rule 65(c), given the nature of the egregious infringement and conduct here, the harm to the defendants if an injunction were determined to have wrongly issued is certainly minimal. Accordingly, ASU proposes a bond of no more than $1,000.

VII. **CONCLUSION**

The COVID-19 pandemic remains a serious public health problem, and the defendant's unauthorized use of the ASU Marks and trade dress in a deliberate attempt to falsely associate ASU with "covid parties" and related messaging not only damages the goodwill and reputation of the university but also puts the health and safety of the community at risk. Such conduct is unacceptable by any reasonable measure. Moreover, Facebook's refusal to modify or disable this account and decision to continue to provide the Instagram service for this account renders it complicit and equally responsible for the harm caused.

ASU respectfully requests that the Court enter a temporary restraining order, followed by a preliminary injunction, which restrains and enjoins (A) the "asu_covid.parties" account holder (i) from using the ASU Marks and the maroon and gold school colors trade dress as part of any account username, profile name, profile picture, and/or bio description, and (ii) from using the ASU Marks and the maroon and gold school colors trade dress in connection with the promotion of any parties, events, or other goods and services; and (B) Facebook from continuing to provide any services to the "asu_covid.parties" account holder as a means for infringing upon the ASU Marks and school colors trade dress, as set forth in the form of order is lodged herewith.

RESPECTFULLY SUBMITTED this 20th day of August, 2020.

By  /s/ Sean D. Garrison
**Glenn S. Bacal** (AZ Bar No. 006812)
E-mail: glenn.bacal@bacalgroup.com
**Sean D. Garrison** (AZ Bar No. 014436)
E-mail: sean.garrison@bacalgroup.com
Direct Dial: 480-719-8501

1
2
3
4
5

**BACAL LAW GROUP, P.C., DBA**
**BACAL & GARRISON LAW GROUP**
6991 East Camelback Road, Suite D-102
Scottsdale, Arizona 85251
Fax: (480) 245-6231

*Attorneys for Plaintiff Arizona Board of Regents,*
*for and on behalf of Arizona State University*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26